Chesnut et al., Appellants, *v.* Chesnut et al.

Argued March 19, 1930.  Before MOSCHZISKER, C. J.,
FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Emerson G. Hess,* for appellants.—In the construction of a will the law seeks to determine the intention of testator, gathered from the entire document: Fox's App., 99 Pa. 382; Allen v. Hirlinger, 219 Pa. 59.

If testator in one part of his will gives to a person an estate of inheritance in land, or an absolute interest in personalty, and in subsequent passages unequivocally shows that he means the devisee or legatee to take a lessor interest, only the prior gift is restricted accordingly: Sheet's Est., 52 Pa. 257; Kreb's Est., 184 Pa. 222; Dickinson's Est., 209 Pa. 59; Trout v. Rominger, 198 Pa. 91; Martin v. Heckman, 25 Pa. Superior Ct. 451; Gross v. Strominger, 178 Pa. 64; Fidelity T. & T. Co. v. Nibozin, 88 Pa. Superior Ct. 113.

Where the words "wish" and "desire" are used in expressing a desire for an act to be done by some person named by testator, they are generally precatory merely, but no such presumption necessarily arises when the words are used to express the intention and will of the testator. In such cases they are held to be mandatory.

The law favors vested rather than contingent estates, and unless it clearly appears from the context or the circumstances of the case that a contingent interest was intended, the remainder will be regarded as vesting at the death of testator, and not at the expiration of the life tenancy: Baches's Est., 246 Pa. 276; Gross v. Strominger, 178 Pa. 64; Tyson's Est., 191 Pa. 218; Henninger v. Henninger, 202 Pa. 207; Watson's Est., 241 Pa. 271; Aurand's Est., 25 Pa. Dist. 725; Richey's Est., 251 Pa. 324; Nieman's Est., 229 Pa. 41.

Since there was no conversion and the property is still real estate, there can be no doubt that ejectment is the proper proceeding in this case, and the orphans' court has no jurisdiction: Ludwick's Est., 255 Pa. 548; Chamberlain's Est., 257 Pa. 113.

*J. Garfield Houston,* for appellees.—Notwithstanding express words of inheritance are lacking, the language of paragraph first, standing alone, clearly creates a fee under section 12 of the Wills Act: Cross v. Miller, 290 Pa. 213.

The intent of testatrix was this: Sarah Jane was to take the entire estate with full rights of ownership; but if Sarah Jane did not in her lifetime consume all of the estate, she in turn was to devise or convey the unused portion to Daniel, who was to apply or dispose of it to the best interest of the Chesnut family: Robinson's Est., 282 Pa. 531.

Whatever doubts may exist as to the intent of the testatrix, there is no doubt that her sister Sarah Jane was to be the principal object of her bounty: Billmyer v. Billmyer, 296 Pa. 31; Witmer v. Delone, 225 Pa. 450; Gilchrist v. Empfield, 194 Pa. 397; Evans v. Smith, 166 Pa. 625.

The appellee maintains that even though it be held Sarah Jane's interest is not a fee, plaintiffs are precluded from recovery in ejectment for two reasons: (1) Because the will works a conversion of the real estate of testatrix from the date of her death. (2) Because the unpaid mortgage and unpaid hospital bills for the support of Sarah Jane are chargeable against the real estate in dispute.

If there was a conversion worked by the will, ejectment will not lie, even though those claiming under Daniel Chesnut are entitled to the unconsumed portion remaining after the death of Sarah Jane: Battenfield v. Kline, 228 Pa. 91; Fahnestock v. Fahnestock, 152 Pa. 56; Marshall's Est., 147 Pa. 77.

Sarah Jane had power to sell, and a power to sell, such as the law implies under this will, includes the power to mortgage: Zane v. Kennedy, 73 Pa. 182, 192; McCreary v. Bomberger, 151 Pa. 323, 328; Rieder v. Miller, 68 Pa. Superior Ct. 529, 534.

OPINION BY MR. JUSTICE SIMPSON, April 21, 1930:

Both parties to this action of ejectment claim title under the will of Nancy Chesnut, who died seized in fee of the land in dispute. The principal question involved is whether, as plaintiffs contend, the will gave to testatrix's sister, Sarah Jane Chesnut, only a life estate with power to consume (which was not exercised in her lifetime), or a fee simple estate, as defendants claim.

The will is as follows:

"1st. After all my lawful debts are paid I give, devise and bequeath to my beloved sister Sarah Jane Chesnut all of my estate, real, personal and mixed, every thing in fact that I now have or may have at my decease and in particular all of my share and interest in and to the real estate inherited by me of my father Joseph Chesnut ...... [here follows a description of the land involved in the ejectment].

"2nd. Should there be any of my estate, real, personal or mixed, or the proceeds thereof unused or not required for the support of my said sister Sarah Jane Chesnut remaining over at her decease, then it is my will that such remaining estate, interest or the proceeds of what I have herein given to my said sister Sarah Jane shall at her (Sarah Jane Chesnut's) death be given, devised, bequeathed, taken and held by my brother Daniel Chesnut, he to use or do with the said estate, remainder or proceeds of the same as he may think best."

It will be noticed that the will does not state the character or duration of the estate given to Sarah Jane Chesnut. Nevertheless, a fee will result because of section 12 of the Wills Act of June 7, 1917, P. L. 403, 407, reënacting section 9 of the Act of April 8, 1833, P. L. 249, 250, "unless it appears by a devise over, or by words of limitation or otherwise in the will, that the *testator intended* to devise a less estate." If the present will shows that there is a devise over, as clearly it does, or that testatrix's dominant purpose was to give her sister less than a fee simple estate, as we think it does, then

the sister, through whom defendants claim, did not get an absolute title to the real estate: Pattin v. Scott, 270 Pa. 49; Schuldt v. Reading Trust Co., 270 Pa. 360; Edwards v. Newland, 271 Pa. 1, 4; Reiff v. Pepo, 290 Pa. 508, 511.

Moreover, we cannot shut our eyes to the fact that, as stated in Allen v. Hirlinger, 219 Pa. 56, but few testators actually know of the statute or of its effect, and hence their real intention must be gathered from the words used by them, rather than from the legal intendment expressed in the act, which, as stated in it, is only applicable after a testator's intent is ascertained from the will itself. For this reason, where, in the grant to the first taker, a testator uses apt language to pass a fee, the later words used by him will more readily be held to be precatory, than they will be if the prior language does not express that purpose. Thus in Evans v. Smith, 166 Pa. 625, where the gift was to the wife "in fee simple," and in Gilchrist v. Empfield, 194 Pa. 397, where it was to the wife "and her heirs," the later words in those wills were held to be precatory; while under similar language in Gross v. Strominger, 178 Pa. 64, and Trout v. Rominger, 198 Pa. 91, where the gift to each wife was "during her natural life," the later words were held to be mandatory, although in the last named case it was said also the wife was "to have and to hold the [property] to her own use, benefit and behoof forever." The distinction stated, of course, results from the fact that in the latter class of cases "there is not the same clear indication of intention as where the fee is expressly given": Fox's App., 99 Pa. 382, 386; Sheets's Est., 52 Pa. 257, 264.

In Allen v. Hirlinger, supra, after a careful consideration, by the late Chief Justice MITCHELL, of the reasons for the difficulties inherent in the situation, and after a review of the previous cases bearing on the question involved, we concluded that "Where a will gives property by words which primarily import a fee, but adds

restrictions inconsistent therewith, the question is whether the intent is to give a lesser estate, or to impose restraints on the estate given. Cases of conflicting provisions are to be classified on this line of distinction." So, also, the present Chief Justice, in writing our opinion in Wettengel's Est., 278 Pa. 571, 573, used the following language, which is quoted and followed in Deeter's Est., 280 Pa. 135, 141, and Smith v. Bloomington Coal Co., 282 Pa. 248, 251: "While testator, in the above-quoted residuary clause of his will, makes the devise to his three daughters and 'their heirs and assigns,' he immediately follows this apparently absolute gift by words plainly indicating a contrary intent. We have repeatedly held that where the dominant purpose shown by a devise is to vest a fee, this estate cannot be stripped of its inherent attributes by subsequent words [merely] indicating an intent so to do: Pattin v. Scott, 270 Pa. 49, 51, and cases there cited: Long's Est., 270 Pa. 480, 485-6. On the other hand, we have probably as often held that, in finding the controlling intention, all the words used by testator should be taken into account, and, if the intent to restrict the gift is clear, it must be given effect: Smith v. Piper, 231 Pa. 378, 384; Schuldt v. Reading Tr. Co., 270 Pa. 360, 364; Edwards v. Newland, 271 Pa. 1, 4. The present will falls fairly within the last stated rule."

In the light of the principles stated, we turn to the construction of the will now before us. If the words of the second paragraph thereof are precatory merely, that is, if they only express a wish by testatrix that her sister should distribute the unused portion of the estate in a specified way, then the presumption of a fee, arising by virtue of the Act of 1917, will ripen into a certainty; whereas if, by them, testatrix herself gives the unused portion to her brother, that gift will prevail over the presumption arising from the statute. In our opinion the latter is the effect of the language used. The will says: "Should there be any of my estate, real, personal

or mixed, or the proceeds thereof unused or not required for the support of my said sister Sarah Jane Chesnut remaining over at her decease, then *it is my will* that such remaining estate, interest or the proceeds...... *shall* at her (Sarah Jane Chesnut's) death *be given, devised, bequeathed, taken and held* by my brother Daniel Chesnut, he to use or do with the said estate, remainder or proceeds of the same *as he may think best."* This can only mean that Sarah Jane Chesnut was given a power of consumption of the principal, but what is not used or required for her support "it is my [testatrix's] will ......shall at her death be given, devised, bequeathed, taken and held by my brother" absolutely. Hence, since the right of the sister to consume for the purpose of her support, did not enlarge her estate to a fee (Tyson's Est., 191 Pa. 218, 226; Walker's Est., 277 Pa. 444, and cases cited; Rumsey's Est., 287 Pa. 448, 452), it necessarily follows that the court below erred in holding that the will gave to her a fee simple estate in the property in dispute.

Two other points are suggested by appellees. They first claim that testatrix's will worked a conversion of all her estate into personalty, and hence plaintiffs could not maintain ejectment for the realty. As defendants have no interest under the will, they have no standing to raise the question. They are in possession of the land, as land, claiming to hold it as land against plaintiffs, who have the only outstanding interest in it, at least until successful proceedings are had by the executors or creditors to enforce the alleged conversion. So far as appears, no such proceedings have been taken. Moreover, there was no conversion. Citing Battenfeld v. Kline, 228 Pa. 91, 95, to which other cases might readily be added, defendants admit that conversion will be worked under the following circumstances only: (1) By a positive direction to sell, which does not exist here; or (2) By an absolute necessity to sell in order to execute the will. The only necessity which could have arisen here would have been to obtain support for the life ten-

ant; but this was a conditional and not an absolute necessity, and is no longer existent, because of her death; or (3) By such a blending of realty and personalty as to show clearly that testatrix intended to create a fund out of both real and personal estate and to bequeath that fund as money. The realty and personalty are blended so far as necessary for the life tenant's support, but not otherwise; and there is no attempt "to bequeath the fund as money." On the contrary, the unused portion of the estate, *"real,* personal or mixed," testatrix says is "given, *devised* and bequeathed" to her brother.

Appellees' final contention is that the life tenant incurred mortgage and judgment obligations for her support, which are unsatisfied, and, in some unstated way, affect plaintiffs' right to recover in ejectment. This also is no concern of theirs. If such encumbrances exist, the holders thereof doubtless know how to enforce their rights; but neither their action nor inaction can give to appellees a right to retain possession of the land as against appellants, who own it, and will continue to be entitled to possession of it until ousted by proceedings taken by or for such creditors, if any exist, or by others who derive title through a sale made in the legal enforcement of the creditors' rights.

The judgment of the court below is reversed and judgment is here entered for plaintiffs.